UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DURA OPERATING CORP.,

                Plaintiff,

Case No. 10-11566

HONORABLE SEAN F. COX
United States District Judge

v.

MAGNA INTERNATIONAL, et. al.,

                Defendants.

_____/

**OPINION AND ORDER (1) DENYING DEFENDANTS' MOTION TO DISMISS (Doc. No. 15), AND (2) DISMISSING AS MOOT PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER (Doc. No. 31) AND DEFENDANT'S MOTION TO COMPEL (Doc. No. 32)**

**I.       INTRODUCTION**

This is a patent infringement case.  Dura Operating Corporation ("Dura") has sued Magna International, Inc. et al. ("Magna") for patent infringement.   Magna has asserted, *inter alia*, a counterclaim alleging that U.S. Patent No. 5,511,193 (the "'193 patent") is unenforceable because of Dura's inequitable conduct before the United States Patent and Trademark Office ("USPTO").

Currently before the Court is Plaintiff Dura's Motion to Dismiss Defendant's Inequitable Conduct Counter-Claims (Docket No. 15), Dura's Motion for a Protective Order Postponing the Depositions of Dean Watson and Jennifer Sinkovich (Docket No. 31), and Magna's Motion to Compel the Deposition of Dean Watson and Jennifer Sinkovich (Docket No. 32).

All the pending motions revolve around one central issue: Whether Defendant Magna alleged its inequitable conduct counterclaim with sufficient "particularity" as required by the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure and the recent

1

case *of Exergen Corp. v. Walmart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009).    Plaintiff Dura

argues that Magna did not plead its inequitable conduct counterclaim with sufficient particularity

and that Magna did not allege sufficient underlying facts showing inequitable conduct as

required by *Exergen*.    Magna argues that it has alleged inequitable conduct with sufficient

particularity.    Subsequent to the briefing on the motion to dismiss being complete, Magna

obtained a document through third-party discovery that supports its inequitable conduct

counterclaim.    Magna requests that it be given an opportunity to amend its pleading to include

the facts surrounding the newly discovered document.

The parties have fully briefed the issues, and the Court declines to hold oral argument

pursuant to Local Rule 7.1(f)(2).    For the reasons stated below, the Court **DENIES** Dura's

motion to dismiss (Docket. No. 15).    The Court **DISMISSES** as moot Dura's motion for a

protective order (Docket No. 31) and Magna's motion to compel (Docket No. 32).    The parties

shall cooperate in scheduling the depositions of Mr. Watson and Ms. Sinkovich within 30 days.


## II.    BACKGROUND ON THE INEQUITABLE CONDUCT DEFENSE

Before reviewing the facts of this case, it is helpful to give some background on the

defense of inequitable conduct to a claim of patent infringement.

The process of obtaining and maintaining a patent from The United States Patent and

Trademark Office (USPTO), called patent prosecution, is essentially an *ex parte* process between

the patent applicant and the USPTO.    *See generally Atlas Powder Co. v. Ireco Chemicals*, 773

F.2d 1230, 1234 (Fed. Cir. 1985).    Because of the *ex parte* nature of patent prosecution, the

USPTO and case law require persons involved in patent prosecution, including the patent

2

attorney and inventors, to deal honestly and in good faith with the USPTO during patent prosecution. This duty of good faith, candor, and honesty is an affirmative duty to disclose information and documents that may affect whether the USPTO grants a patent to the invention. *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp*. 488 F.3d 982, 999 (Fed. Cir. 2007).

The USPTO has implemented a federal regulation requiring those associated with procuring a patent, including the patent attorney and inventors, to affirmatively disclose material information that is relevant to whether the USPTO grants a patent, and the regulation requires that such persons deal with the USPTO in good faith.   Specifically, 37 C.F.R. § 1.56, typically called USPTO Rule 56, creates a duty of honesty, candor, and good faith in dealing with the USPTO.   § 1.56 states in relevant part:

37 C.F.R. § 1.56 **Duty to disclose information material to patentability**

(a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application. There is no duty to submit information which is not material to the patentability of any existing claim. The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98. However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct.

3

(b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

(1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position the applicant takes in:

(i) Opposing an argument of unpatentability relied on by the Office, or

(ii) Asserting an argument of patentability.

A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

(c) Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:

(1) Each inventor named in the application;

(2) Each attorney or agent who prepares or prosecutes the application; and

(3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

37 CFR § 1.56.  § 1.56 applies in proceedings before the USPTO and is itself not a defense in litigation.

In order to enforce the duty of candor, good faith, and honesty before the USPTO, the courts through the common law have created a defense called "inequitable conduct" to a claim of patent infringement where a patent applicant during the prosecution of a patent application or maintenance of a patent intentionally withholds material information or submits false

4

information with an intent to deceive the USPTO.  To establish the defense of inequitable conduct at trial, the challenger must prove by clear and convincing evidence that an individual associated with the prosecution of a patent application or maintenance of a patent (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information; and (2) intended to deceive the USPTO.  *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008).  Minimum threshold levels of both materiality and intent must be established, but the ultimate conclusion of whether inequitable conduct has been committed involves weighing the total evidence of intent and materiality to determine whether the patentee's actions rise to such a level that the patent should be held unenforceable.  *Kingsdown Med. Cons. Ltd. v. Hollister Inc*., 863 F.2d 867 (Fed. Cir. 1988) (en banc).  If the accused infringer establishes inequitable conduct, each and every claim of the patent may be held unenforceable.  *Star Scientific,* 537 F.3d at 1365.  Inequitable conduct is commonly described as "fraud on the patent office," but the defense of inequitable conduct is actually broader than fraud because the applicant does not need to establish that the USPTO relied upon the intentional misrepresentation or failure to disclose.

## III.   FACTUAL AND PROCEDURAL BACKGROUND

Dura filed this patent infringement lawsuit against the Defendants on November 26, 2008 in the Eastern District of Texas. (*See* Doc. No. 4).  Dura's Complaint includes causes of action related to the alleged infringement of four separate patents: 1) U.S. Patent No. 5,522,191 ("the '191 Patent"); 2) U.S. Patent No. 5,799,449 ("the '449 Patent"); 3) U.S. Patent No. 5,422,880 ("the '880 Patent"); and 4) 5,511,193 ("the '193 Patent").  The Texas court transferred this matter to this Court on April 19, 2010. (*See* Doc. No. 1).

On May 10, 2010, the Defendants filed their Answer, Affirmative Defenses and Counterclaim (Doc. No. 7).   Specific to the instant motion, the Defendants' included a counterclaim alleging that the '193 Patent is unenforceable due to Dura's inequitable conduct. (*See* Doc. No. 9, ¶¶68-82).   The specific allegations of inequitable conduct in the Defendants' counterclaim are as follows:

70.   On September 3, 2004, the term of the '193 patent expired due to failure to pay the required maintenance fee.   Upon information and belief, at the time of the expiration of the '193 patent, the '193 patent was owned by Dura.

71.   On July 8, 2005, a petition entitled "Petition to Accept Unintentionally Delayed Payment of Maintenance Fee in an Expired Patent" related to the '193 patent (the "193 PETITION") was received by the USPTO, Office of Petitions.   The '193 PETITION states, "The delay in payment of the maintenance fee to this patent was unintentional. . . PETITIONER(S) REQUEST THAT THE DELAYED PAYMENT OF THE MAINTENANCE FEE BE ACCEPTED AND THE PATENT REINSTATED."   The petition was signed by Dean B. Watson, who is, upon information and belief, an attorney currently employed by Dura.

72.   On September 20, 2005, the USPTO issued a decision, accepting the maintenance fee payment and reinstating the '193 patent.   The September 20, 2005 decision states "It is not apparent whether the person signing the statement of unintentional delay was in a position to have firsthand or direct knowledge of the facts and circumstances of the delay at issue. Nevertheless, such statement is being treated as having been made as the result of reasonable inquiry into the facts and circumstances of such delay. In the event that such an inquiry has not been made, petitioner must make such an inquiry.   If such inquiry results in the discovery that the entire delay in paying the maintenance fee under 37 CFR 1.378(c) was intentional, petitioner must notify the Office."

73.   Upon information and belief, the delay in paying the maintenance fee for the '193 patent was not unintentional.   Upon information and belief, Dura allowed the '193 patent to lapse after it abandoned the technology disclosed in the '193 patent.

74.   Upon information and belief, the person who signed the statement of unintentional delay in the '193 PETITION, namely Dean B. Watson, was

6

not employed by the owner of the '193 patent at the time the '193 patent expired.   Upon information and belief, Dean B. Watson was employed by Energy Conversion Devices, Inc. until December 2004, which is three months after the '193 patent expired and three months after the maintenance fee payment was due.

75.    Upon information and belief, the person who signed the statement of unintentional delay in the '193 PETITION, namely Dean B. Watson, did not have knowledge that the delay in paying the maintenance fee was in fact unintentional.

76.    Upon information and belief, the person who signed the statement of unintentional delay in the '193 PETITION, namely Dean B. Watson, did not make the appropriate inquiry to ascertain that, in fact, the delay was unintentional.

77.    Upon information and belief, if the person who signed the statement of unintentional delay in the '193 PETITION, namely Dean B. Watson, discovered that the delay in paying the maintenance fee was intentional, that person did not notify the USPTO as required by the September 20, 2005 decision.

78.    The statement of unintentional delay was material to the decision of the USPTO.   The USPTO would not have accepted the fee and would not have reinstated the '193 patent without the statement of unintentional delay.

79.    Upon information and belief, the statement of unintentional delay was made without basis and with an intent to deceive.

80.    Pursuant to Fed. R. Civ. P. 11(b)(3), Magna Donnelly identifies the allegations of paragraphs 73-77 and 79 as being likely to have further evidentiary support after a reasonable opportunity for further investigation or discovery.

(Defs.' Counterclaim, Doc. No. 7, ¶¶70-80).

On June 2, 2010, Dura filed the instant motion to dismiss, arguing, pursuant to *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), that the Defendants have failed to set forth the sufficient factual bases for their inequitable conduct counterclaim.   Magna opposes Dura's motion to dismiss. (*See* Defs.' Br., Doc. No. 19).

7

On December 3, 2010, Dura filed a motion for a protective order seeking to postpone the depositions of Dura's in-house counsel Dean Watson and Mr. Watson's former secretary Jennifer Sinkovich until this Court rules on its motion to dismiss. Mr. Watson and Ms. Sinkovich are fact witnesses concerning Magna's inequitable conduct counterclaim. Dura states that Mr. Watson intends to be co-litigation counsel in this case, although Mr. Watson has not yet made an appearance and he did not sign the Complaint. Because Mr. Watson intends to be co-counsel in this case, Dura argues in passing that the Court should only allow Magna to take Mr. Watson's deposition if inequitable conduct is clearly shown and the evidence could not be obtained from another person. If the motion to dismiss is granted, Dura does not intend to allow the depositions of Mr. Watson and Ms. Sinkovich as their testimony would not be relevant to a claim or defense in the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . ."). Dura also argues that the depositions are improper because Magna seeks to inquire about topics protected by the attorney-client privilege. (*See* Dura Rely Br. to Mot. for Protective Order at p. 6, Doc. No. 37.)

Also on December 3, 2010, Defendant Magna filed a motion to compel the depositions of Dean Watson and Jennifer Sinkovich. In its motion to compel, Magna disclosed a document that it describes as a "smoking gun" to support its inequitable conduct defense and to support its position that Dura intentionally abandoned the '193 patent. If Dura intentionally abandoned the '193 patent by failing to pay the maintenance fee, the patent could not have been "revived" under patent laws, which allow revival for "unintentional" failures to pay a patent maintenance fee. The "smoking gun" document is a letter dated February 6, 2004 from Dura's "IP

8

Paralegal" Jennifer Sinkovich to Computer Patent Annuities ("CPA"), which is an outsourcing company that calendars the deadlines for paying patent maintenance fees and, when instructed by the patent owner, pays the maintenance fees when they are due.   In the letter, Ms. Sinkovich instructs CPA to not pay the maintenance fee on the '193 patent.   (Ex. F to Mot. to Compel, Doc. No. 32.)

According to the Court's current Scheduling Order for this case, fact discovery is set to close on March 22, 2011.

## IV.    LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6) such as this, a court must determine whether the pleading, here a counterclaim, articulates sufficient facts to state a cause of action such that the claim should be allowed to proceed forward.   Rules 8(a) and 9 set forth the standards for pleading causes of action.   Rule 8(a)(2) sets forth the default general pleading standard, while Rule 9 sets forth the pleading standard for certain types of special matters.

Rule 8(a)(2) states: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."   Recently, the Supreme Court, in the cases of *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, changed the standard for pleading a cause of action under Rule 8(a)(2).   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).   *Twombly* and *Iqbal* establish a "plausibility" pleading standard for Rule 8(a)(2).   Pursuant to *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss [under Rule 8(a)(2)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Iqbal*, 129 S.Ct. at 1949.

In considering a motion to dismiss, a court must treat all well-pleaded factual allegations in the

pleading as true.   However, even under the general default pleading standard of Rule 8(a), "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.   *Id. at 1949* (discussing the general pleading requirements of Rule 8(a)(2)).   "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.   When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."   *Id*. at 1950.

Rule 9 sets forth the standard for pleading certain kinds of "special matters."   Rule 9(b) sets forth the standard for pleading fraud and conditions of the mind such as "intent."   Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.   Malice, intent, knowledge, and other conditions of a persons mind may be alleged generally."   In regards to the statement that intent may be alleged "generally," the Supreme Court in *Iqbal* held that Rule 9(b) was merely excusing a party from pleading intent under the heightened pleading standard of the previous sentence.   "It does not give him license to evade the less rigid-though still operative-strictures of Rule 8."   *Iqbal*, 129 S.Ct. at 1954.

Federal Circuit law, not regional circuit law, applies to the question of whether inequitable conduct has been adequately pleaded under Rules 9(b) and Rule 8.   *Exergen Corp. v. Wal-mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).   The Federal Circuit has held that "inequitable conduct, while a broader concept than fraud, must be pled with particularity under Rule 9(b)."   *Id*.

Recently, in *Exergen Corp. v. Wal-mart Stores, Inc.*, the Federal Circuit articulated the

standard for pleading inequitable conduct under Rule 9(b).   *Exergen* created new law.   In order to resolve the motions at bar, the Court must apply the teaching in *Exergen* to the facts of this case.   Both Dura and Magna argue that *Exergen* supports its position.

According to *Exergen*, a pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b).   *Exergen*, 575 F.3d at 1326-27.   According to the Federal Circuit, a pleading alleging inequitable conduct must "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."   *Id*. at 1328. "Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."   *Id*. at 1328-29. Specifically, the Federal Circuit in *Exergen* summarized the standard for pleading inequitable conduct as follows:

> In sum, to plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this *1329 information with a specific intent to deceive the PTO.[FN5]

> FN5. A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith. *See Greenstone v. Cambex Corp.,* 975 F.2d 22, 26 (1st Cir.1992) (Breyer, C.J.) (declining to infer fraudulent intent where "the complaint makes clear that

Cambex publicized its IBM memory 'trade-in' practice with a candor that seems inconsistent with knowledge of illegality or fear of a lawsuit"), *superseded by statute on other grounds,* Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67, 109 Stat. 737. In contrast to the pleading stage, to prevail on the merits, the accused infringer must prove both materiality and intent by clear and convincing evidence.   Whereas an inference of deceptive intent must be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b), this inference must be "the *single most reasonable* inference able to be drawn from the evidence to meet the clear and convincing standard."

*Exergen*, 575 F.3d at 1328-29 (emphasis added) (some citations omitted).

## V.   ANALYSIS

### A.   MOTION TO DISMISS

Magna's counterclaim alleges that Dura's in-house patent attorney Dean Watson committed inequitable conduct in reviving the '193 patent after the patent lapsed for failure to pay a maintenance fee.   An owner of a patent must pay periodic "maintenance fees" after a patent is granted to keep the patent in force.[1]   If the patent owner fails to pay one of the scheduled maintenance fees, the patent expires and the patent is unenforceable.   35 U.S.C. § 41(b); 37 C.F.R. § 1.135.   The patent laws allow a patent owner to revive an expired patent within 24 months after it expires if the failure to pay the maintenance fee was "unintentional."   35 U.S.C. § 41(c).   In order to revive the patent, the USPTO requires the patent owner file a petition to revive the lapsed patent.   A grantable petition must be accompanied by a statement which states that the entire delay from the due date until the filing of a grantable petition was unintentional.   37 C.F.R. § 1.137(b).   The USPTO relies upon the patentee's duty of candor

---

[1]   Maintenance fees are due on or before 3.5, 7.5, and 11.5 years after the grant of the patent.   The patent laws also provide for a 6 month grace period after the deadline within which the patent owner can pay the maintenance fee along with a late surcharge. If the patent owner does not pay the maintenance fee by the time the grace period expires,

and good faith in submitting such statements and warns that intentionally submitting an inaccurate statement can result in a court finding the patent unenforceable.   Specifically, the USPTO's Manual of Patent Examining Procedure states:

> While the Office reserves the authority to require further information concerning the cause of abandonment and delay in filing a petition to revive, the Office relies upon the applicant's duty of candor and good faith and accepts the statement that "the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137(b) was unintentional" without requiring further information in the vast majority of petitions under 37 CFR 1.137(b). This is because the applicant is obligated under 37 CFR 10.18 to inquire into the underlying facts and circumstances when a practitioner provides this statement to the Office. In addition, providing an inappropriate statement in a petition under 37 CFR 1.137(b) to revive an abandoned application may have an adverse effect when attempting to enforce any patent resulting from the application. *See Lumenyte Int'l Corp. v. Cable Lite Corp.*, Nos. 96-1011, 96-1077, 1996 U.S. App. LEXIS 16400, 1996 WL 383927 (Fed. Cir. July 9, 1996)(unpublished)(patents held unenforceable due to a finding of inequitable conduct in submitting an inappropriate statement that the abandonment was unintentional).

*          *          *

The Office is almost always satisfied as to whether "the entire delay was unintentional" on the basis of statement(s) by the applicant or representative explaining the cause of the delay (accompanied at most by copies of correspondence relevant to the period of delay).

*          *          *

## 1.   Unintentional Delay

The legislative history of Public Law 97-247, § 3, 96 Stat. 317 (1982), reveals that the purpose of 35 U.S.C. 41(a)(7) is to permit the Office to have more discretion than in 35 U.S.C. 133 or 151 to revive abandoned applications in appropriate circumstances, but places a limit on this discretion stating that

---

the patent expires and it becomes unenforceable.   35 U.S.C. § 41(b) and (c).

"[u]nder this section a petition accompanied by [the requisite fee] would not be granted where the abandonment or the failure to pay the fee for issuing the patent was intentional as opposed to being unintentional or unavoidable." H.R. Rep. No. 542, 97th Cong., 2d Sess. 6-7 (1982), *reprinted in* 1982 U.S.C.C.A.N. 770-71. A delay resulting from a deliberately chosen course of action on the part of the applicant is not an "unintentional" delay within the meaning of **37 CFR 1.137(b)**.

Where the applicant deliberately permits an application to become abandoned (e.g., due to a conclusion that the claims are unpatentable, that a rejection in an Office action cannot be overcome, or that the invention lacks sufficient commercial value to justify continued prosecution), the abandonment of such application is considered to be a deliberately chosen course of action, and the resulting delay cannot be considered as "unintentional" within the meaning of **37 CFR 1.137(b)**. See *In re Application of G*, 11 USPQ2d 1378, 1380 (Comm'r Pat. 1989). An intentional course of action is not rendered unintentional when, upon reconsideration, the applicant changes his or her mind as to the course of action that should have been taken. See *In re Maldague*, 10 USPQ2d 1477, 1478 (Comm'r Pat. 1988).

A delay resulting from a deliberately chosen course of action on the part of the applicant does not become an "unintentional" delay within the meaning of **37 CFR 1.137(b)** because:

(A) the applicant does not consider the claims to be patentable over the references relied upon in an outstanding Office action;

(B) the applicant does not consider the allowed or patentable claims to be of sufficient breadth or scope to justify the financial expense of obtaining a patent;

(C) the applicant does not consider any patent to be of sufficient value to justify the financial expense of obtaining the patent;

(D) the applicant does not consider any patent to be of sufficient value to maintain an interest in obtaining the patent; or

(E) the applicant remains interested in eventually obtaining a patent, but simply seeks to defer patent fees and patent prosecution expenses.

Likewise, a change in circumstances that occurred subsequent to the abandonment of an application does not render "unintentional" the delay resulting from a previous deliberate decision to permit an application to be abandoned. These matters simply confuse the question of whether there was a deliberate decision not to continue the prosecution of an application with why there was a deliberate decision not to continue the prosecution of an application.

In order to expedite treatment, applicants filing a petition under 37 CFR **1.137**(b) to revive an abandoned application are advised to include the statement "the

entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137(b) was unintentional," even if applicant chooses to include a statement of the facts concerning the delay. Applicants may use the forms provided by the Office (PTO/SB/64, PTO/SB/64a, or PTO/SB/64PCT).

M.P.E.P. § 711.03(II)(C), cited by M.P.E.P. § 2590(II).[2]

Subsequent to all briefing on the motion to dismiss being complete, Magna discovered new evidence to support its inequitable conduct defense.   Magna, in its motion to compel and its response to Dura's motion for a protective order, alleges that Mr. Watson deceived the USPTO into reviving the '193 patent by intentionally not disclosing facts that show Dura intentionally did not pay the maintenance fee on the '193 patent.   Magna correctly points out that this allegation is significant because a patent which is intentionally abandoned by a patent owner cannot be revived.     (Motion to Compel at p. 2, Doc. No. 32.)   As additional factual support for its argument, Magna directs the Court to the letter from Dura's IP paralegal Jennifer Sinkovich to CPA in which Ms. Sinkovich instructed CPA to intentionally not pay the maintenance fee on the '193 patent.   Magna's argument was not pled with this specificity in its counterclaim.   Rather, Magna states in its motion to compel that this additional factual support was recently learned through third-party discovery.   Although Magna has not yet moved to amend its counterclaim at this time, it is apparent that Magna desires to amend its pleading to include these additional facts and arguments after conducting further discovery.   Because both parties have had a chance to address these arguments in the motion to compel and in the motion

---

[2] The Manual of Patent Examining Procedure, "although it does not have the force of law, is well known to those registered to practice in the PTO and reflects the presumptions under which the PTO operates."   *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc*., 120 F.3d 1253 (Fed. Cir. 1997).   The Federal Circuit has relied upon the Manual Patent Examining Procedure as persuasive authority.   *Id*.

for a protective order, the Court will grant Magna an opportunity to amend its counterclaim to include these facts.   In order to save time and judicial resources, the Court will decide the present motion to dismiss assuming that these additional facts will be added to Magna's counterclaim.   Other courts have handled these types of situations similarly.   *See, e.g., Tucker v. McCormack*, 2010 WL 3619825, *2 (M.D. Tenn. 2010).

In its motion to dismiss, Dura argues that Magna's inequitable conduct counterclaim fails to allege sufficient factual bases on the issues of materiality and intent as required by *Exergen*. Accordingly, the Court will review Magna's allegations of materiality and intent.

## MATERIALITY

In order to plead a claim of inequitable conduct with "particularity," *Exergen* requires that "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."   *Exergen*, 575 F.3d at 1328.   The Court finds that Magna has adequately alleged the who, what, when, where, and how of a material misrepresentation or omission.

"The Who" – According to *Exergen*, the inequitable conduct claim must allege a specific person, not a corporation, who committed the material misrepresentation or omission. *Exergen*, 575 F.3d at 1329.   The Court finds that Magna has clearly identified Mr. Watson as the person who committed the material misrepresentation or omission.

"The What" and "The Where" – The inequitable conduct claim must identify the material misrepresentation or omission and where the material information is located.   *Id*.   For example, if a patent applicant is alleged to have failed to disclose a piece of material prior art to the USPTO, the inequitable conduct pleading must identify what is the prior art, where in the prior

16

art is the material information, and which claim limitations in the patent is the material information relevant to.   *Id*.   The Court finds that Magna has sufficiently alleged the "what" and "where" of a material misrepresentation or omission.   Magna alleged that Mr. Watson failed to disclose that Dura intentionally failed to pay the maintenance fee and allowed the '193 patent to lapse.   In support of its position, Magna has also produced a letter from Dura's legal department instructing its supplier CPA to abandon the '193 patent.

"The When" – The inequitable conduct claim must identify when the material misrepresentation or omission occurred.   Magna has alleged that Mr. Watson committed the material misrepresentation or omission on July 8, 2005 when he submitted the statement certifying that the failure to pay the maintenance fee on the '193 patent was unintentional.   The Court finds that Magna has sufficiently alleged when the material misrepresentation or omission occurred.

"The Why" and "The How" – The inequitable conduct claim must identify or explain why the intentional misrepresentation or omission is "material" and how the USPTO would have used this information in assessing patentability.   *Id*. at 1229-30.   "Information is material when a reasonable [USPTO patent] examiner would consider it important in deciding whether to allow the application to issue as a patent."   *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co*., 537 F.3d 1357, 1367 (Fed. Cir. 2008); *see also* 37 C.F.R. § 1.56(b).   Information is not material if it is cumulative of other similar information already disclosed to the USPTO.   *Id*.; 37 C.F.R. § 1.56(b) ("[I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application").   Magna alleges that Dura intentionally failed to pay the maintenance fee on the '193 patent and that Mr. Watson

intentionally did not disclose this fact to the USPTO. If Dura intentionally did not pay the maintenance fee, then that fact would have been material because "a reasonable USPTO patent examiner" would not have revived the '193 patent if the failure to pay the maintenance fee was intentional. *See, e.g.,* M.P.E.P § 711.03(c)(II)(C) (quoted above). Moreover, the letter from Ms. Sinkovich to CPA would likely have been of interest to a reasonable USPTO patent examiner. Based on the above, the Court finds that Magna has alleged sufficient factual bases of a material misrepresentation or omission.

## INTENT

*Exergen* instructs that "although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id*. at 1329-30 n.5. In contrast to the trial stage of a case where an accused infringer must establish intent to deceive the USPTO by clear and convincing evidence, at the pleading stage, the accused infringer must only show a reasonable inference of intent based on the allegations of underlying fact. *Id*.

The Court finds that Magna has alleged facts that establish an inference of intent to deceive the USPTO, especially considering that Magna has not completed discovery. The alleged facts show that Dura, through its IP paralegal Ms. Sinkovich, intentionally abandoned the

18

'193 patent by failing to pay the maintenance fee.   As mentioned above, this fact was material

and it was not disclosed to the USPTO.   It is reasonable to infer that the letter from Ms.

Sinkovich instructing CPA to abandon the '193 patent was placed in Dura's files and would have

been discovered by Mr. Watson when he preformed an investigation as to whether the failure to

the pay the maintenance fee on the '193 patent was unintentional.   The Court notes that in its

experience attorneys and legal departments generally keep papers such as the Sinkovich letter in

their files.   Obviously, CPA had the letter in its files since Magna obtained the letter from CPA.

 Magna also alleges that Mr. Watson was not employed by Dura when the '193 patent lapsed.

Accordingly, it is reasonable to presume that had Mr. Watson done an investigation, he would

have discovered that Dura intentionally failed to pay the maintenance fee on the '193 patent.

Based on these facts, a person could infer that Mr. Watson intentionally failed to disclose this

fact to the USPTO.

        Under the facts alleged, the Court finds that Magna has alleged a reasonable inference of

deceptive intent and that Magna should have the opportunity to conduct further discovery into its

inequitable conduct claim.   As the Federal Circuit has said, "direct evidence of deceptive intent

is rarely available, such intent can only be inferred from indirect and circumstantial evidence."

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co*., 537 F.3d 1357 at 1366; *Merck & Co., v.

Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989) ("Intent need not, and rarely can,

be proven by direct evidence.").   Dura may have a reasonable explanation as to why its legal

department did not intend to deceive the USPTO, but no such explanation is apparent based on

the facts alleged.   *See Bruno Independent Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394

F.3d 1348, 154-55 (Fed. Cir. 2005) (upholding a finding of inequitable conduct where the

patentee did not offer a credible explanation for not disclosing prior art to the USPTO where the facts showed that the patentee understood the relevancy of the prior art by submitting the prior art to the FDA).   At the pleading stage, Magna must only allege facts that establish "a reasonable inference" of intent to deceive the USPTO.   In contrast, at trial, Magna must show that the inference to deceive the USPTO is the "single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard."   *Exergen*, 575 F.3d at 1329-30 n.5.

Dura argues that the case of *Ferguson Beauregard/Logic Controls v. Mega Systems LLC*, 350 F.3d 1327, 1343-44 (Fed. Cir. 2003) supports its position.   While *Ferguson* involved generally the same issue of whether a failure to pay a maintenance fee was unintentional, the facts of that case are distinguishable from the case at bar.   In *Ferguson*, the accused infringer never pled inequitable conduct, but rather only pled that the revival of the patent was improper because the petitioner did not have firsthand knowledge of the facts and circumstances as to whether the delay in paying the maintenance fee was unintentional and that a reasonable inquiry into whether the failure to pay the maintenance fee was unintentional was not made.   Without there being a pleading specifically alleging inequitable conduct, the Federal Circuit "decline[d] to infer facts to support a claim that must be pled with particularity."   *Id*. at 1344.   In contrast to *Ferguson*, in this case, Magna has alleged inequitable conduct and alleged specific newly discovered facts to support its inequitable conduct counterclaim.   Had Magna not discovered the letter from Ms. Sinkovich to CPA this would be a closer case.   The Federal Circuit in *Exergen* has made it more difficult for parties to plead inequitable conduct claims and thereby be entitled to discovery on facts relevant to inequitable conduct.   *Exergen*, 575 F.3d at 1330-31;

20

Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ."); *see also Aventis Pharma S.A. v. Amphastar Pharmas., Inc*., 525 F.3d 1334, 1349-1351 (Fed. Cir. 2008) (Rader, J., dissenting).   Although at the beginning of this case Magna may not have been able to plead sufficient facts to support an inequitable conduct defense, Magna was fortunate enough to obtain new evidence through a third-party to support its inequitable conduct defense.

In total, the Court finds that Magna has alleged sufficient factual bases of materiality and intent to support its inequitable conduct claim at this stage of the lawsuit.

**B.    DURA'S MOTION FOR PROTECTIVE ORDER AND MAGNA'S MOTION TO COMPEL**

In its motion for a protective order, Dura seeks to postpone the depositions of Mr. Watson and Ms. Sinkovich until after the Court has ruled on its motion to dismiss.   Because the Court is denying the motion to dismiss, Dura's motion for a protective order is now moot.

In its motion to compel, Magna requests a court order compelling the depositions of Mr. Watson and Ms. Sinkovich.   Magna also requests that the Court require Dura to make Mr. Watson and Ms. Sinkovich available for deposition within 10 days of issuing an order granting Magna's motion to compel.   Because Dura was only seeking to postpone the depositions of Mr. Watson and Ms. Sinkovich until after the Court decided Dura's motion to dismiss, Magna's motion to compel is now moot.   The Court finds that Magna should be given the opportunity to take the depositions of Mr. Watson and Ms. Sinkovich within a reasonable period of time, but not necessarily within 10 days.   However, Mr. Watson and Ms. Sinkovich should be made available for depositions no later than 30 days from this Court Order, unless there are significant extenuating circumstances.   The Court instructs the parties to work together to find mutually

agreeable dates for the depositions.   The Court notes that the discovery deadline is March 22, 2011, so the depositions should take place sooner rather than later.

The Court notes that Dura has argued in passing that Magna is seeking to obtain discovery of attorney-client privileged communications in the depositions of Mr. Watson and Ms. Sinkovich.   The Court will not address this issue at this time because the issue was not squarely addressed in the present motions before the Court.   The Court does note that Mr. Watson's and Ms. Sinkovich's testimony is relevant.   Dura may want to waive the attorney client privilege to provide a good faith explanation as to why Dura did not intentionally abandon the '193 patent or deceive the USPTO.   *Compare Bruno Independent Living Aids, Inc.*, 394 F.3d at 154-55 (upholding a finding of inequitable conduct where the patentee did not offer a credible explanation for not disclosing prior art to the USPTO where the facts showed that the patentee understood the relevancy of the prior art by submitting the prior art to the FDA), *with M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.,* 439 F.3d 1335, 1342-43 (Fed. Cir. 2006) (holding that a patentee's lack of a good faith explanation alone did not establish intent to deceive the USPTO).

## VI.    CONCLUSION

For the reasons explained above, the Court **DENIES** Dura Operating Corp.'s "Motion to Dismiss Defendants' Inequitable Conduct Counter-Claims" (Doc. No. 15).   The Court **DISMISSES** as moot Dura's Motion for a Protective Order (Doc. No. 31) and Magna's Motion to Compel the Depositions of Mr. Watson and Ms. Sinkovich (Doc. No. 32).   The parties shall cooperate in scheduling the depositions of Mr. Watson and Ms. Sinkovich.   Magna shall amend its inequitable conduct counterclaim within a reasonable time after taking the depositions of Mr.

22

Watson and Ms. Sinkovich to include the recently discovered facts relevant to its inequitable

conduct counterclaim.

**IT IS SO ORDERED.**


Dated:   March 10, 2011                       s/ Sean F. Cox
                                              Sean F. Cox
                                              U. S. District Judge


I hereby certify that the above document was served on counsel and/or the parties of record by
electronic means.

Dated:   March 10, 2011                       s/ Jennifer Hernandez
                                              Case Manager

23